

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| ROBERT BOWIE and RONNIE NEWSOME, | ] ] ] |
| Plaintiffs, | ] ] ] |
| vs. | ] CV-03-CO-00670-S ] |
| JEFFERSON COUNTY BOARD OF EDUCATION, | ] ] ] |
| Defendant(s). | ] |

MEMORANDUM OF OPINION

I.   Introduction.

The plaintiffs, Robert Bowie ("Bowie") and Ronnie Newsome ("Newsome"), filed suit on March 25, 2003, against the defendant, Jefferson County Board of Education ("Board") on behalf of themselves and similarly situated employees. [Compl., Doc. # 1.] Bowie and Newsome allege that they are due overtime compensation under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 207(a)(1)(1992). Presently before the court is a motion for summary judgment, filed by the Board on June 24, 2004. [Doc. # 18.] Also before the court is a motion to file a responsive submission out

of time, filed by the plaintiffs on July 29, 2004 [Doc. # 21]. The plaintiffs' motion to file their responsive submission out of time is GRANTED. Upon due consideration, the court is of the opinion that the defendant's motion for summary judgment is due to be granted in all respects.

II.   Facts.[1]

Most Board employees work 7.5 hours a day during the school year. [Brown Aff. ¶ 5.] During the summer, the employees typically work 7 hours a day. [*Id.*] Board employees are instructed to take a one hour duty-free lunch during the day. [*Id.*]

    A.   Bowie and Newsome.

Bowie and Newsome are employed by the Board and work primarily in the Support Operations Department. Bowie and Newsome assert that they were made to work through their lunch hours without compensation. [Bowie Aff. ¶¶ 3 & 4; Newsome Aff. ¶ 3.] George Rogers ("Rogers") works alongside

---

[1] The facts set out below are gleaned from the defendant's submission of facts claimed to be undisputed and the court's own examination of the evidentiary record. All reasonable doubts about the facts have been resolved in favor of the nonmoving party. See *Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002). These are the "facts" for summary judgment purposes only. They may not be the actual facts. See *Cox v. Adm'r U.S. Steel & Carnegie Pension Fund*, 17 F.3d 1386, 1400 (11th Cir. 1994).

Bowie as a furniture repairman. [Rogers Aff. ¶ 2.] Rogers asserts in his affidavit that he and Bowie were told not to take lunch because of the work load. [Rogers Aff. ¶ 3.] Rogers states that he and Bowie either took no lunch at all or an abbreviated one. [*Id.*]

Bowie and Newsome maintained and signed time sheets, certifying that the dates and times stated thereon were a true and accurate record of their attendance. [Def.'s Exs. D & G.] According to the time records, Bowie and Newsome consistently certified that they worked 7.5 hours a day, 37.5 hours a week, aside from occasional variations due to holidays, vacation, or sick leave. [*Id.*] Separate records were maintained regarding any overtime Bowie and Newsome claimed and the Board's calculation of the amount of compensation they were due. Those overtime records were also signed by Bowie and Newsome. [Def.'s Exs. D & G.]

Dr. Yancy Morris, Deputy Superintendent for Administrative Services for the Board, stated that employees were instructed to record authorized overtime on their time sheets. [Morris Aff. ¶ 12, Def.'s Ex. 2.] Morris did not recall ever personally authorizing overtime for Bowie or Newsome and knew of no claim for overtime by either employee. [Morris Aff. ¶¶ 11 & 13, Def.'s

Ex. 2.] Eddie Brown, Director of Support Operations, stated that he reviewed and approved Bowie and Newsome's time sheets and there were no overtime hours worked for which Bowie and Newsome had not been paid. [Brown Aff., Ex. 3.]

B.   Alabama Education Accountability Plan.

Alabama enacted the Education Accountability Plan ("Plan") in 1995. Ala. Code §§ 16-6B-1 to -12 (1975). By enacting the Plan, the Alabama legislature intended (1) higher achievement for students and (2) a safe environment in which to learn. *Id.* § 16-6B-1 (1975). The Plan sets forth strategies for students, schools, and school systems in need of educational assistance and requires that local boards be accountable for their finances and the safety and discipline within their respective schools. *Id.* § 16-6B-1 to -5. The Plan provides that the State Board of Education may intervene in the affairs of a local school board if they are found to be deficient in any of these areas. *Id.*

On February 3, 2000, after experiencing a significant financial deficit, the Board voted unanimously to request that the State Department of Education intervene in the Board's financial operations pursuant to the

Education Accountability Act. *Id.* § 16-6B-4. [Morris Aff. ¶ 2; Hammonds Aff. ¶ 2.] On February 10, 2000, the State Department of Education formally authorized intervention and effectively assumed control over the Board's financial operations. [Morris Aff. ¶ 2.]

III.  Standard.

Summary judgment is proper "if the pleadings, depositions, and answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the evidence] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catreet*, 477 U.S. 317, 323 (1986). The movant can meet this burden by presenting evidence showing that there is no genuine dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322-23. In evaluating the

arguments of the movant, the court must view the evidence in the light most favorable to the nonmoving party. *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996).

Once the moving party has met his burden, Rule 56(a) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)). "A factual dispute is genuine only if a 'reasonable jury could return a verdict for the nonmoving party.'" *Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002) (quoting *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1437 (11th Cir. 1991)).

IV.  Discussion.

Plaintiffs desiring to sue as a class under the FLSA must do so by way of the opt-in class mechanism provided in 29 U.S.C. § 216(b). Under § 216(b), any putative plaintiff must opt-in by filing written consent with the court. In their complaint, Bowie and Newsome moved the court to allow their suit to proceed as a collective action on behalf of Board employees

similarly situated to them. As named plaintiffs, Bowie and Newsome filed their consent to be included in the putative class as required under § 216(b). [Exs. A & B, Compl.]

In Bowie and Newsome's response to the Board's motion for summary judgment, affidavits and opt-in consents were attached from George Rogers, Dwayne Pouncy, and Bryce Craig — additional Board employees claiming to be party plaintiffs in this lawsuit. However, the court has not ruled on the issue of whether to create an opt-in class under § 216(b). Neither have the plaintiffs moved the court to amend their complaint to add these three individuals as party plaintiffs.

The court is of the opinion that since Bowie and Newsome's claims are due to be dismissed in their entirety on the merits, the issue of class certification is moot. The affidavits of Dwayne Pouncy and Bryce Craig are therefore stricken. The affidavit of George Rogers is stricken to the extent he claims to be a plaintiff in this suit. However, Rogers is a repairman along with Bowie and claims to have personal knowledge of what he and Bowie were told regarding their lunch hours. Thus, Rogers affidavit will be

considered only to the extent it supports Bowie's claim to overtime compensation.

The Board seeks summary judgment as to all of Bowie and Newsome's claims alleged in the complaint and, in sum, sets forth the following arguments: (1) the Board is immune from suit under the Eleventh Amendment; (2) the plaintiffs' claims for damages that occurred prior to March 2001 are time-barred; and (3) the plaintiffs have not established that they worked overtime hours without compensation and that the Board knew or should have known of the overtime. The court will address each argument in turn.

A.   Eleventh Amendment Immunity.

The Board alleges that all of the plaintiffs' claims are barred by the Eleventh Amendment and, as such, the court does not have jurisdiction to hear these claims. The Eleventh Amendment provides, "The Judicial Power of the United States shall not be construed to extend to any suit in law or in equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. Although the language of the Eleventh Amendment

applies to actions brought against a state by a citizen of another state, the United State Supreme Court has extended the Eleventh Amendment's applicability to suits against a state by its own citizens. *Hans v. Louisiana*, 134 U.S. 1, 15 (1890).

The Supreme Court held in *Edelman v. Jordan* that "a suit by private parties seeking to impose liability which must be paid from public funds in the state treasury are barred by the Eleventh Amendment." 415 U.S. 651, 663 (1974). The Eleventh Amendment protects not only the states from suit by private individuals but also state agencies, instrumentalities, and officials. *Harden v. Adams*, 760 F.2d 1158, 1163 (11th Cir. 1985). However, "the principle of sovereign immunity is that it bars suits against States but not lesser entities." *Alden v. Maine*, 527 U.S. 706, 756 (1999). Indeed, "[t]he immunity does not extend to suits prosecuted against a municipal corporation or other governmental entity which is not an arm of the State." *Id.*

In *Mt. Healthy Bd. of Educ. v. Doyle*, the Supreme Court held that a local school board in Ohio was not entitled to immunity under the Eleventh Amendment:

> Under Ohio law the "State" does not include "political subdivisions," and "political subdivisions" do not include local school districts. Petitioner is but one of many local school boards within the State of Ohio. It is subject to some guidance from the State Board of Education and receives a significant amount of money from the State. But local school boards have extensive powers to issue bonds and to levy taxes within certain restrictions of state law. On balance, the record before us indicates that a local school board of education is more like a county or city than it is like an arm of the state.

429 U.S. 274, 280-81 (1977). Following the reasoning of the Supreme Court in *Mt. Healthy*, the former Fifth and Eleventh Circuit Courts of Appeals have held that local school boards in Alabama, Florida, and Louisiana are not entitled to Eleventh Amendment immunity. *See Stewart v. Baldwin County Bd. of Educ.*, 908 F.2d 1499 (11th Cir. 1990) (Alabama); *Travelers Indem. Co. v. Sch. Bd. of Dade County*, 666 F.2d 505 (11th Cir. 1982) (Florida); *Moore v. Tangipahoa Parish Sch. Bd.*, 495 F.2d 489 (5th Cir. 1979) (Louisiana). In holding that Alabama county school boards are not an "arm of the State" for purposes of Eleventh Amendment immunity, the Eleventh Circuit found it significant that Alabama county school boards possessed "a significant amount of flexibility in raising local funding," could "establish general education policy," possessed "general administration and

supervision responsibility for the schools," and are "imbued with the authority to assign teachers and to place students." *Stewart*, 908 F.2d at 1511. The Court also weighed the fact that local school boards are locally controlled and board members receive "compensation from the public funds of the county." *Id.*

The Board contends initially that *Stewart* was decided incorrectly in 1990 and further argues that even if the Eleventh Circuit Court of Appeals did decide *Stewart* correctly, the enactment of Alabama's Education Accountability Plan in 1995 — which allows the State Board of Education to intervene in the operations of local school boards based on student achievement or financial instability — has eroded the *Stewart* decision. Specifically, the Board argues that since the State has intervened and taken control of the Jefferson County Board of Education's financial operations pursuant to the Plan, it is now an "arm of the State" and entitled to Eleventh Amendment immunity.

It is true that the State Board of Education provides a substantial amount of guidance to the local school boards and the Education Accountability Plan is another manifestation of the State's responsibility to

the local boards. However, the State Board of Education will intervene in a local board's affairs only when it is financially unstable or cannot meet the educational needs of students. State intervention does not continue indefinitely. Indeed, the State Board of Education only intervenes for such a period of time as necessary to bring the school or local board within an acceptable level of student achievement or financial soundness. *See* Ala. Code § 16-6B-6 (1975).

The Supreme Court, the Eleventh Circuit Court of Appeals, and Alabama federal district courts have all held that county school boards are not entitled to Eleventh Amendment immunity. *See Smith v. Dallas County Bd. of Educ.*, 480 F. Supp. 1324, 1335-36 & n.2 (S.D. Ala. 1979); *Andrews v. Coffee County Bd. of Educ.*, CV.A. No. 88-D-1095-S, 1988 WL 214509, at *5 (M.D. Ala. Jan. 18, 1988). The court is not persuaded by the Board's argument that the State's temporary intervention, due to the Board's dire financial situation, is sufficient to veer from established and reasoned law to find that the Board is now an "arm of the State" and entitled to Eleventh Amendment immunity. Indeed, this would result in the metaphorical cloud with a silver lining. Therefore, the court is of the opinion that the Jefferson

County Board of Education is not immune from suit under the Eleventh Amendment.

B.     Statute of Limitations.

Civil actions brought pursuant to the FLSA must be "commenced within two years after the cause of action accrued, except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued." 29 U.S.C. § 255(a). The plaintiffs commenced this suit on March 25, 2003, alleging the Board violated the FLSA by denying them overtime compensation from September 1999 to September 2002. [Compl. ¶ 7.] In order for the three-year exception to the FLSA statute of limitations to apply, the plaintiffs must show that the Board "either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute . . . ." *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988). Otherwise, the two-year statute of limitations governs the timeliness of the claims.

Bowie and Newsome assert in their complaint that the Board "conceal[ed] the true status of its hourly employees" and led them to believe "that they were not entitled to overtime pay . . . ." [Compl. ¶ 13.]

Bowie and Newsome contend that the Board's concealment tolls the statute of limitations and the Board is estopped from asserting the statute of limitations as an affirmative defense. *Id.*

Equitable tolling may apply when a defendant conceals a cause of action from a plaintiff. Under equitable tolling, the statute of limitations does not run until the plaintiff knows, or should know, facts giving rise to a cause of action. *Cerbone v. ILGWU*, 768 F.2d 45, 48 (2nd Cir. 1985). Similarly, when a plaintiff knows the existence of a cause of action but the defendant causes him to delay in bringing a lawsuit, the court may find that the defendant is estopped from arguing a statute of limitations defense. *Id.* at 50.

The court is of the opinion that equitable tolling and estoppel are not appropriate in this case. Bowie and Newsome have not come forward with evidence supporting their argument that they did not know of their right to overtime compensation and the Board concealed this right from them or induced them not to act. Furthermore, the plaintiffs have failed to come forward with any evidence showing the Board acted with reckless disregard for the FLSA.

As Bowie and Newsome have not carried their burden of establishing that the three-year exception applies, nor persuaded the court that the statute of limitations should be tolled on an equitable basis, the court is of the opinion that the two-year statute of limitations applies and Bowie and Newsome's claims occurring before March 23, 2001, are time-barred.

C.   Bowie and Newsome's FLSA claims.

Section 7 of the FLSA provides for the payment of overtime compensation, of not less than one and one-half times the regular rate, to employees who work more than 40 hours per week.  29 U.S.C. § 207(a)(1). Bowie and Newsome have the burden of proving that they worked overtime without compensation.  *See Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 686-87 (1946).  Additionally, Bowie and Newsome must show that the Board had knowledge, or should have had knowledge, of their uncompensated overtime.  *See Reich v. Dep't of Conservation and Natural Res., State of Alabama*, 28 F.3d 1076, 1082 (11th Cir. 1994); *see also* 29 C.F.R. § 785.11(2004).

Bowie and Newsome have presented their respective affidavits and that of a coworker claiming that they worked overtime hours.  In their

affidavits, Bowie and Newsome contend that their supervisors instructed them to work through lunch. Although these affidavits support Bowie and Newsome's contentions that they worked overtime, the affidavits do not establish that the Board failed to pay the plaintiffs for the additional hours worked.

In its motion for summary judgment, the Board provided signed time records maintained and submitted by Bowie and Newsome, dating back to March 2000, including overtime claimed by the plaintiffs. The records detail the overtime hours claimed by Bowie and Newsome and the Board's calculation of the amount of compensation they were due.

Bowie and Newsome have not established that they were not compensated for their overtime hours. Neither have Bowie and Newsome produced any evidence that the Board had reason to believe that Bowie and Newsome's submitted time records did not include all of their claimed overtime hours. *See Gaylord v. Miami-Dade County*, 78 F. Supp. 2d 1320, 1325 (S.D. Fla. 1999) ("An employer does not have knowledge of uncompensated overtime when an employee submits time sheets showing such overtime did not occur.") *See also Brumbelow v. Quality Mills, Inc.*,

462 F.2d 1327 (5th Cir. 1972) (Employee was estopped from claiming more hours than those submitted on her time sheet.)

The burden of proof rests on Bowie and Newsome to show that they worked overtime hours for which they were not compensated and the Board knew or should have known that Bowie and Newsome were working these uncompensated overtime hours. Bowie and Newsome failed to discharge that burden. In addition, the Board has come forth with time records of both plaintiffs to show that the Board paid overtime compensation claimed by Bowie and Newsome and that the Board had no reason to believe the plaintiffs were engaged in overtime in addition to what they reported. The plaintiffs have failed to dispute the evidence submitted by the Board. Therefore, summary judgment is proper.

V.  Conclusion.

In sum, the court is of the opinion that the Board's motion for summary judgment is due to be granted. The court will enter an appropriate order in conformity with this memorandum of opinion.

Done, this \_\_\_4\_\_ of August, 2004.

/s/ L. Scott Coogler
L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE